## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM HOPKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 2:10-00523-KD-N |
| | ) | |
| **CITY OF SELMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on Defendants' Motion for Summary Judgment, brief and evidentiary materials in support (Doc. 8)¸ Plaintiff's response, brief and evidentiary materials in support (Docs. 12, 14), and Defendants' reply (Doc. 13). Upon consideration, and for the reasons set forth herein, Defendants' motion for summary judgment is due to be **GRANTED.**

I.  Procedural History

On August 11, 2010, Plaintiff William Hopkins ("Hopkins") filed a complaint against Defendants in the Circuit Court of Dallas County, Alabama, seeking damages and other appropriate relief under 42 U.S.C. § 1983 ("§ 1983") pursuant to an incident in which he was arrested and detained by City of Selma police officers. (Doc. 1-1). Defendants were served with the complaint on September 14, 2010. (Doc. 1 at 2, ¶ 12). On September 22, 2010, Defendants removed the case to this Court, citing jurisdiction pursuant to 28 U.S.C. § 1443. (Doc. 1).

On September 23, 2010, Defendants answered the complaint, denying each and every allegation and demanding strict proof thereof. (Doc. 2). On May 31, 2011, Defendants filed this motion for summary judgment. (Doc. 8). The motion is now ripe for consideration.

1

II.      <u>Standard of Review</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed," the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Once the moving parties have satisfied their responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).

"If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." <u>Id.</u> (quoting <u>Celotex Corp.</u>, 477 U.S. at 323 (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

2

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children and Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

With specific respect to the resolution of a summary judgment motion based on qualified immunity, the Eleventh Circuit has declared:

> [W]e approach the facts from the plaintiff's perspective because "[t]he issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998). As this Court has repeatedly stressed, the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Nevertheless, for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff. See Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

III.  Findings of fact[1]

On August 26, 2008, the day of the mayoral election in the City of Selma, Alabama, Louis Dixon, a mayoral candidate, and his wife, Felicia Owens Dixon, were driving around the City of Selma campaigning against the sitting mayor. (Docs. 8-3, 8-4, 8-5 at 8, pp. 25-27). They dropped their daughter off at school around seven o'clock that morning, picked her up from school around three and drove around the city both in between and after so doing, before the arrest at issue. (Doc. 8-5 at 8, p. 28). A heavy-duty utility trailer was attached to the van for

---

[1] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff,] the nonmoving party." Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

people to ride along and campaign. (Id. at 9, pp. 29-30).

After dropping their daughter off at school that morning, the Dixons picked up Hopkins at his home. For much of the day, Hopkins drove the van while the Dixons and another passenger, Claude Hester, rode inside the van or on the trailer, using a bullhorn to project campaign messages. (Id. at 9-10, pp. 31-34).

Later that same day, Selma police officers responded to a call of disorderly conduct and shots fired in front of or near Carter's Drug Store in downtown Selma. (Doc. 8-1 at 2, Narrative; Docs. 8-3, 8-4). Several eyewitnesses identified a van with an attached trailer as carrying the suspected shooters. (Docs. 8-3, 8-4). Eyewitnesses also positively identified the Dixons as occupants of the van who were brandishing weapons. (Id.). Hopkins too was identified by eyewitnesses as an occupant of the van. (Doc. 8-6).

Following discussions with eyewitnesses, Selma police officers stopped the subject van and had the driver and all passengers exit the vehicle. (Id.; Doc. 8-1 at 2, Narrative; Docs. 8-3, 8-4). At the time of the stop, Louis Dixon was the driver of the van, and Felicia Dixon, Claude Hester, and Hopkins were all passengers (Doc. 8-1 at 2, Narrative; Doc. 8-5 at 11, p. 38). Hopkins was seated behind Felicia Dixon. (Doc. 8-5 at 11, p. 38). After all of the subjects were removed, the officers checked the vehicle for the weapons that discharged the reported shots. (Doc. 8-1 at 2, Narrative).

The initial search was a "plain view" search. During the plain view search, the police officers saw, in plain sight, a handgun on the driver's side of the van. A semi-automatic rifle and a shotgun were sitting in plain view in the back seat of the van. Another handgun was discovered underneath a sofa cushion on the attached trailer. (Docs. 8-3, 8-4). In all, the police officers found two handguns, one semi-automatic weapon and a shotgun in the vehicle. (Doc. 8-

1 at 4, Narrative; Doc. 8-5 at 14-15, pp. 52-53). Ammunition for all four guns was also in the van. (Doc. 8-5 at 16, p. 57). At the scene, none of the detained subjects, including Hopkins, stated that they had a valid permit to carry the handguns or present a valid permit for the handguns. (Docs. 8-3, 8-4).

During the search, the officers also found the Dixons' daughter, then five years old, in the back of the van. (Doc. 8-1 at 4, Narrative; Doc. 8-5 at 11, pp. 38-39). All of the adult occupants of the vehicle were arrested and charged with carrying a handgun without a permit, in violation of Alabama Code § 13A-11-73. (Doc. 8-1 at 1, 4; Doc. 8-2). The Dixons were also charged with endangering the welfare of a child, in violation of Alabama Code § 13A-13-6. (Doc. 8-1 at 1, 4).

Hopkins was transported to the Selma city jail for booking, processing and the completion of paperwork. Because the Selma city jail does not have the capacity to hold arrested persons for any extended period of time, the City of Selma has made an arrangement with the Dallas County jail to hold arrested persons on behalf of the Selma police department. Therefore, after the paperwork related to Hopkins' arrest was completed, Hopkins was transported to the Dallas County jail. The arrestee then becomes the primary responsibility of the Dallas County jail. It is the policy and procedure of the Dallas County jail and the Selma police department that if any arrestee of the Selma police department has any health or medical issues while in the custody of Dallas County, the Selma police department is immediately notified. Then either the Selma police department will pick up the arrestee and transport him or her to a hospital, or an ambulance will be called and the arrestee will be taken to the hospital where he or she will be met by the Selma police department. No notification was received by the Selma police regarding any medical or health issue related to Hopkins while he was detained in the Dallas County jail.

Hopkins also did not mention any health or medical issue while in the custody of the Selma police department before being sent to the Dallas County jail. (Doc. 8-6).

On August 29, 2008, Hopkins was admitted to the emergency room at Vaughan Regional Medical Center in Selma for weakness. (Doc. 14 at 2, Plaintiff's Exhibit 2). On September 27, 2008, Hopkins was formally charged with carrying a handgun without a permit. (Id. at 3, Plaintiff's Exhibit 3). On August 4, 2009, that charge was dismissed. (Id. at 4, Plaintiff's Exhibit 4).

Felicia Dixon filed a complaint in the Circuit Court of Dallas County, Alabama, on September 15, 2009, naming as defendants the City of Selma, six individual Selma police officers, and Tanya Miles, one of the individuals who called the police to report the actions of the Dixons. As the Complaint alleged a cause of action pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, the case was subsequently removed to this Court by the defendants. (Dixon v. City of Selma, Civil Action No. 2:09-00684-KD-N, Doc. 1). This Court granted summary judgment as to all defendants in the action filed by Felicia Dixon, finding that the arrest was valid based on the "probable cause abundantly evident in this case" and that the individual police officers were entitled to immunity. Dixon v. City of Selma, supra, 2010 WL 5094366, at *7-8, 2010 U.S. Dist. LEXIS 129812, at *12-27, adopted by 2010 WL 5341882, 2010 U.S. Dist. LEXIS 129911 (S.D. Ala. Dec. 8, 2010) ("Dixon I"). This Court also granted summary judgment in favor of the City of Selma. Id. at WL *9, LEXIS *27-32. All Defendants in the present case, with the exception of J. Crum, were also defendants in Felicia Dixon's case. (Dixon, Civil Action No. 2:09-00684-KD-N, Doc. 1-1).

On August 11, 2010, Louis Dixon and E.N.N., the Dixons' daughter, also filed a complaint in the Circuit Court of Dallas County alleging federal causes of action arising from the

same events and arrests. It too was removed to this Court. (Dixon v. City of Selma, Civil Action No. 2:10-00478-KD-N, Doc. 1). All Defendants in the present action were also defendants in Louis Dixon's case, (Id., Doc. 1-1), and the Court has recently granted summary judgment as to all defendants in that case. Dixon v. City of Selma, Civil Action No. 2:10-0478-KD-N, 2011 WL 2681474, 2011 U.S. Dist. LEXIS 74956 (S.D. Ala. July 11, 2011).

IV. Conclusions of law

In his complaint, Hopkins claims that as a result of his arrest and detention stemming from the events of August 26, 2008, Defendants violated his "civil rights under color of state law and Article I, § 6,7 of the Constitution of Alabama 1901." (Doc. 1-1 at 1, ¶ 4). Specifically, he alleges that he was arrested without probable cause and that the arrest violated his rights "to be free from unreasonable arrest" under the Fourth Amendment and to due process under the Fourteenth Amendment. (Id. at 2, ¶¶ 8-9). As to these claims, Defendants contend that the individual police officer defendants are entitled to qualified immunity and that no cause of action exists against the defendant City of Selma. Defendants also claim that this Court's determinations in Dixon I bar litigation of these claims under the doctrine of *res judicata*.

Hopkins also alleges in his complaint that he is a diabetic and that he was unreasonably deprived of medical care while he was in detention. (Id., ¶ 11). Defendants have interpreted this allegation as a claim of either a due process violation under the Fourteenth Amendment or deliberate indifference to a serious medical need under the Eighth Amendment. (Doc. 8 at 12).

A. Hopkins' Motion to Dismiss Certain Claims

In his response to Defendants' motion for summary judgment, Hopkins states that he "voluntarily dismisses all claims against the City of Selma and claims related to failure to provide medical treatment." (Doc. 12 at 1). Because Defendants did not sign Hopkins'

7

response, and because it has been requested after the Defendants have served their answer, the Court construes this statement as a motion for dismissal pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

In their reply (Doc. 13), Defendants acknowledge this statement of dismissal, (Id. at 1 n.1), make no objection to it, and treat the claims as having been dismissed. Therefore, the Court finds that Hopkins' claims against the City of Selma and his claims related to failure to provide proper medical treatment are due to be **DISMISSED with prejudice**.

    B.    <u>Remaining Claims</u>

As a result of Hopkins' motion for dismissal, the only claims for the Court to address are those against the individual defendant police officers for alleged constitutional deprivations stemming from Hopkins' arrest and detention.

    (1)    *Res Judicata*

"*Res judicata*" is the collective term for two separate doctrines: "claim preclusion" and "issue preclusion." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." <u>Id.</u> (internal citations and quotations omitted). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1238 (11th Cir. 1999).

As to Hopkins' claims of constitutional deprivations stemming from the arrest itself, Defendants contend that they are entitled to both issue preclusion and claim preclusion for these

8

claims due to the Court's judgment in Dixon I, in which the same causes of action were asserted by Felicia Dixon and which arose from the same incident. Except for J. Crum, all Defendants in the present case were also defendants in that case.[2]

"Under the doctrine of res judicata, a claim is barred by prior litigation if: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010). There is no doubt that Felicia Dixon's case reached a final judgment on the merits, that the decision was rendered by a court of competent jurisdiction, and that the same cause of action stemming from the arrest is involved in both her case and the present one. The only question is whether Hopkins can be considered "in privity" with Felicia Dixon in her suit.

Issue preclusion, also known as collateral estoppel, applies if the following conditions are met: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." I.A. Durbin, Inc. v. Jefferson Nat'l

---

[2] Hopkins argues that Defendants have waived the defense of *res judicata*, as it was not affirmatively pled in their answer. (Doc. 12 at 10). Defendants assert that the defense was not available at the time of filing their answer because final judgment had not yet been entered in Dixon I. (Doc. 13 at 6 n.2). Though Defendants could have requested leave to amend their answer to add the defense once it became available, the Court will consider it anyway. See Shurick v. Boeing Co., 623 F.3d 1114, 1116 n.2 (11th Cir. 2010) ("Although Federal Rule of Civil Procedure 8(c) classifies claim preclusion as an affirmative defense, dismissal by the court sua sponte on res judicata grounds is permissible in the interest of judicial economy *where both actions were brought before the same court*." (internal quotations omitted) (emphasis added)); Bergquist v. Fid. Info. Servs., 197 F. App'x 813, 815 (11th Cir. 2006) ("'[W]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.'" (quoting Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988))).

9

Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). However, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." Taylor, 553 U.S. at 892.

As to what constitutes acceptable application of non-party preclusion, the Eleventh Circuit held:

> The Supreme Court recently clarified the use of nonparty preclusion in Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 2172-73, 171 L. Ed. 2d 155 (2008). As a general rule, "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Id. at 2171 (quoting Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940)). The rule against nonparty preclusion, however, is subject to six categories of exceptions. Id. at 2172. A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants. See id. at 2172-73.

Griswold, 598 F.3d at 1292.

Defendants claim that Hopkins should be bound by the judgment in Dixon I because he was "adequately represented" by Felicia Dixon in that case. Taylor provides the following examples in setting forth this category of nonparty preclusion:

> . . . [W]e have confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.

553 U.S. at 894-95 (internal citations and quotations omitted).

Though the list of examples for this category is not exhaustive, the examples provided convince the Court that this category as articulated by the Supreme Court does not apply to Hopkins and Felicia Dixon in this case. Defendants have presented no authority to the contrary,

nor have they presented evidence that any of the other categories of permissible non-party exclusion apply. Claim preclusion and issue preclusion are both affirmative defenses, for which Defendants bear the burden of proof, see id. at 907, and the Court find that Defendants have not met this burden. Therefore, Hopkins is not prevented by *res judicata* from litigating the claims and issues relating to his arrest and detention in this case.

    (2)  The Merits

  a. *The individual defendant police officers are entitled to qualified immunity.*

"Public officials are entitled to qualified immunity so long as their discretionary actions do not violate clearly established statutory or constitutional rights." Autery v. Davis, 355 F. App'x 253, 256 (11th Cir. 2009) (citing Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). Under Saucier v. Katz, 533 U.S. 194 (2001), the "threshold question" to be determined before any other inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. Only if the answer to that question was affirmative may the Court proceed to determine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." Id. The two-part inquiry established in Saucier is, however, no longer mandatory. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"Qualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability.'" Townsend v. Jefferson Cnty., 582 F.3d 1252, 1258 (2009). See also McCullough, supra, 599 F.3d at 1205 ("Qualified immunity offers complete protection for

11

government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (same). The defense of qualified immunity is predicated on a showing by the defendant police officer that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations omitted).

"To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). See also Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004) ("Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . [and] we look to the general nature of the defendant's actions. . .").

There is ample evidence in the record before the Court that the officers' decision whether or not to detain/arrest Hopkins was an action taken pursuant to their discretionary authority. It is undisputed that the officers were on duty and "were acting within the purview of their authority" when they performed the traffic stop and arrested the plaintiff. There is no question that the acts of the defendant officers "fell within the [police officers'] job responsibilities." Crosby, supra. The officers performed the duties of their jobs in that they responded to a call regarding suspects brandishing weapons and firing weapons; performed a traffic stop and pulled over the vehicle identified by eyewitnesses as carrying the suspects who allegedly fired the shots; detained the suspects and performed a plain view search which resulted in the discovery of two handguns, a rifle, a shotgun and a five-year old child; and, based upon eyewitness reports and their own

observations, placed Hopkins and other occupants of the vehicle under arrest. Accordingly, the Court finds that the officers were exercising their discretionary authority at the time of the incident made the basis of Hopkins' complaint.

Because the defendant police officers established that they were acting within their discretionary authority, the burden then shifts to Hopkins to show that it would be inappropriate for the police officers to receive qualified immunity in this case. Lee, 284 F.3d at 1194.[3] To meet his burden, Hopkins must first show that, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Id. (quoting Saucier, 533 U.S. at 201). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. The second step of the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established")). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but

---

[3] "Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. If the facts, construed as they must be in this summary judgment appeal in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (internal citations omitted).

it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted). In other words, Hopkins must show that the defendant police officers had "fair warning" that their alleged conduct was unconstitutional. Id. at 741. See also Pearson, supra, 129 S. Ct. at 818-21 (The process for establishing a qualified immunity defense can be tailored to the details of a particular case.).

Under the Fourth Amendment, an individual has a right to be free from "unreasonable" searches and seizures and an arrest of a person constitutes a seizure of that person. Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). Whether a seizure by an arrest was "reasonable" under the Constitution turns on a finding of probable cause, Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004), a determination made under the totality of the circumstances, Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause to arrest for the commission of a crime may be found when the "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. (citing United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)). A warrantless arrest without probable cause violates the Constitution. Id. (citing Kingsland, 382 F.3d at 1226); Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999).

However, even if an officer arrests an individual without probable cause in violation of the Constitution, this does not automatically strip the officer of qualified immunity protection: "We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop, 485 F.3d at 1137. See also Anderson, 483 U.S. at 641. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have

indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Id.

In wrongful arrest cases, the "clearly established" prong is frequently framed as an "arguable probable cause" inquiry. "[T]he court applies the standard of 'arguable probable cause,' that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest.'" Id. In other words, when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had "arguable probable cause" to make the arrest. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009). See also Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) ("Given our conclusion that [defendant] had actual probable cause and no constitutional violation occurred, we need not discuss the arguable probable cause doctrine...for purposes of determining the second prong of the qualified immunity test."); Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001) ("Because [defendant] had arguable probable cause to arrest [plaintiff], he violated no clearly established law."); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Case, 555 F.3d at 1327 (citing Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983)). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Id. (quoting Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. l990)). Probable cause must be assessed "not with clinical detachment but with a common sense view to the realities of normal life." Id. (quoting Wilson v. Attawa, 757 F.2d 1227, 1235 (11th

Cir. l985)). The probable cause determination is an objective one. Id. (citing Lee, 284 F.3d at 1188); Rankin v. Evans, 133 F.3d 1425, 133 (11th Cir. 1998). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition ..." Id. (quoting Saucier, 533 U.S. at 201). The key element in "arguable probable cause" is what information the officer knew or had at the time of the arrest to warrant a prudent person to believe that the suspect had committed an offense. Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Rankin , 133 F.3d at 1435.

The constitutional violations alleged by Hopkins in his complaint involve two closely related claims which arise from his arrest - - a claim for unreasonable arrest and a claim for violation of due process. Hopkins' unreasonable arrest claim is founded on the United States Constitution's Fourth Amendment prohibition against "unreasonable searches and seizures," and "an arrest is a seizure of the person." Skop, 485 F.3d at 1137; Case, 555 F.3d at 1326. A seizure is unreasonable only if carried out in the absence of probable cause. Id. Hopkins' due process claim is founded on the Fourteenth Amendment protection against deprivation of liberty without due process of law. An incarceration subsequent to arrest is a deprivation of liberty without due process of law only when the arrest was made in the absence of probable cause. Case, 555 F.3d at 1330.

The critical question relative to both of Hopkins' claims is the existence, or lack thereof, of actual or arguable probable cause to arrest Hopkins. In his response, Hopkins claims that he was not involved in brandishing weapons, firing shots, or shouting obscenities. (Doc. 12 at 1, 8). However, Hopkins has presented no evidence to dispute that, during the time he was driving around Selma campaigning with the Dixons, the police received complaints that the Dixons and the other occupants of the van were brandishing weapons and shouting obscenities. Hopkins was

16

identified by eyewitnesses as one of the van's occupants. Hopkins also does not dispute that the police received a call the same day "regarding shots being fired." (Doc. 8-1 at 2, Narrative; Docs. 8-2, 8-3, 8-6). While he argues that no one had specifically identified him as one of the people engaged in such activities and that "[t]he overwhelming evidence in the case points to the Dixons[]" as engaging in these activities, (Id. at 8-9 (citing Plaintiff's Exhs. 6, 7, 8)), Hopkins has failed to explain how it could be deemed unreasonable for a police officer to respond to eyewitness reports that shots were fired from a particular vehicle in which particular people are identified by stopping that vehicle and subsequently arresting those identified individuals after guns are discovered not only in proximity to the occupants but to a five year old child.

In his response, Hopkins further alleges that he was "informed that he was not being arrested but was []being detained for questioning[]" and that he was "never asked if he had a pistol permit[.]" (Doc. 12 at 9 (citing "Exhibits 1-7")). He also claims that he "never posted a bail nor was informed of his court date, and was only released from jail after he was taken by ambulance on August 29, 2008 to the hospital." (Id. at 1-2, "Narrative of Facts" (citing "Exhibit 2"). However, none of the exhibits to which Hopkins cites - indeed none of his or Defendants' exhibits – support any of these allegations, even when viewed in the light most favorable to him. See Fed. R. Civ. P. 56(c). Regardless, whether true or not, these alleged facts do not alter the Court determinations as to Hopkins' remaining claims.[4]

Based on the record, there existed probable cause to support the officers' actions and they are, therefore, entitled to immunity from any claim for unreasonable arrest or violation of due

---

[4] In their reply, Defendants state that these and certain other "facts" alleged in Hopkins' response are "due to be stricken" as not being supported by evidence pursuant to Fed. R. Civ. P. 56(c). (Doc. 13 at 1-4). This motion is **MOOT**, as the Court has not relied any of these unsupported "facts" in reaching its decision.

17

process. See Terry v. Ohio, 392 U.S. 1 (1968) (An officer may conduct a stop if he has a reasonable suspicion that criminal activity is afoot.). As such, the individual police officer defendants are entitled to summary judgment in their favor as to Hopkins' claims stemming from his arrest.

  b.  *Hopkins has failed to allege a viable claim under state law.*

Hopkins states in his complaint that "[t]his action is brought for damages and other appropriate relief under 42 U.S.C. § 1983 for violation of the Plaintiff's civil rights under color of state law and Article I, § 6, 7 of the Constitution of Alabama 1901." (Doc. 1-1 at 1, ¶ 4). However, no cognizable state law claims are alleged in the complaint.

Section 6 is captioned "Rights of persons in criminal prosecutions generally; self incrimination; due process of law; right to speedy, public trial; change of venue," and states as follows:

> That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do; and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of the county or district in which the offense was committed; and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law; but the legislature may, by a general law, provide for a change of venue at the instance of the defendant in all prosecutions by indictment, and such change of venue, on application of the defendant, may be heard and determined without the personal presence of the defendant so applying therefor; provided, that at the time of the application for the change of venue, the defendant is imprisoned in jail or some legal place of confinement.

Ala. Const. Art. I, § 6.

Section 7 is captioned "Accusation, arrest and detention; punishment limited to laws established prior to offense," and states as follows:

> That no person shall be accused or arrested, or detained, except in cases

ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied.

Ala. Const. Art. I, § 7.

Either section may form the basis for various state law claims, e.g., false imprisonment, false arrest, or malicious prosecution. However, Hopkins has failed to allege any of these state law claims. His conclusory allegation that his rights under the Alabama Constitution have been violated is not sufficient to state a claim or a cause of action but instead is simply his legal conclusion. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

V.  Conclusion

For the abovementioned reasons, the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on all claims not voluntarily dismissed by Hopkins. Accordingly, it is **ORDERED** that Hopkins' claims against the City of Selma and his claims related to failure to provide proper medical treatment are **DISMISSED with prejudice** and that Defendants' Motion for Summary Judgment (Doc. 8) is **GRANTED** as to all remaining claims.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **18th** day of **July, 2011**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**